# In the United States District Court
# for the Southern District of Georgia
# Savannah Division

THEODORE HELGESEN,

    Plaintiff,

    v.

CCF HOLDINGS, LLC, et al.,

    Defendants.

4:25-cv-43

## ORDER

This action is before the Court on Plaintiff Theodore Helgesen's motion for a temporary restraining order (TRO) and Preliminary Injunction, dkt. no. 53, Defendant Allan Jones's motion to dismiss, dkt. no. 56, and a motion to dismiss filed jointly by Defendants CCF Holdings, LLC, CCF MIP Holdings, LLC, CCFI Companies, LLC, Lisa Vittorini, William Baker, Julie Torkelson, Steve Scoggins, Allan Jones, Ted Saunders, Michael Durbin, and Hanson Enterprises International, LLC (hereinafter the "jointly filing Defendants"), dkt. no. 57. For the reasons given below, Plaintiff's motion for a TRO and preliminary injunction, dkt. no. 53, is **DENIED**; Defendant Jones's motion to dismiss, dkt. no. 56, is **GRANTED**; the jointly filed motion to dismiss, dkt. no. 57, is partially **GRANTED** and partially **DENIED**.

**BACKGROUND**

## I.   Factual Background

This case concerns Plaintiff's alleged wrongful termination and the subsequent withholding of certain units of interest in Defendant CCF MIP, LLC from him. In 2023, Plaintiff was the President and Chief Operating Officer of TMX Finance Corporate Services, Inc. ("TMX") when Defendant CCF Holdings LLC d/b/a "Community Choice" acquired TMX. Dkt. No. 51 ¶¶ 35, 38. After the acquisition, Plaintiff became President of Community Choice, and thus an officer of a CCF entity. Id. ¶¶ 43-44, 64. On January 1, 2024, Plaintiff was granted 9.002 Class B Units, which represented a 2.369 percent profits interest in CCF MIP, LLC pursuant to a Profits Interest Awards Agreement (the "Awards Agreement") which additionally provided that the profit payments were to be made on a monthly basis. Id. ¶ 47. Those payments were made monthly beginning January 2024 and ending February 2025. Id.

Plaintiff alleges that leading up to January 2025, he was "increasingly excluded from critical financial discussions regarding the company." Id. ¶ 63. Due to this alleged exclusion and other incidents at Community Choice, on February 8, 2025, Plaintiff refused to sign a credit agreement. Id. ¶¶ 78-88. In so doing, Plaintiff emailed the Chief Legal Officer that he could not sign the agreement because he no longer had "the necessary access to, visibility, or inclusion into the company's financial

2

conditions or any other material facts referenced in this agreement." Id. ¶¶ 78,88. In that same email, Plaintiff suggested that it was "in everyone's best interest to work towards a mutually beneficial separation." Id. ¶ 88.

The following day, February 9, 2025, another executive allegedly emailed Plaintiff and expressed his understanding that Plaintiff had resigned from the company. Id. ¶ 90. Later the next day, February 10, 2025, Plaintiff lost access to his work email and company systems. Id. ¶ 84. On February 12, 2025, Plaintiff allegedly received a letter from the Chief Legal Officer that characterized his departure from Community Choice as a "for cause termination." Id. ¶ 98. Plaintiff filed suit shortly thereafter on March 4, 2025, and he was removed from administrative leave and officially terminated on March 5, 2025. Id. ¶¶ 102, 110.

Plaintiff alleges that Defendant Community Choice terminated his employment without cause. Id. ¶ 109. Plaintiff alleges that, per his employment agreement, he was owed twelve months of severance and almost one million dollars in bonuses upon termination without cause. Id. ¶ 108. Additionally, the Awards Agreement purportedly provided that, if Plaintiff was terminated without cause, his Class B Units would become "100% vested." Id. ¶ 113. Plaintiff alleges that Defendant Community Choice has withheld the distributions for his Class B Units to which he is

rightfully entitled, refused to recognize his ownership of the units, and failed to tender the units to him. Id. ¶ 114.

The second amended complaint (SAC) names several defendants: CCF Holdings, LLC d/b/a Community Choice Financial ("Community Choice"); CCF MIP Holdings, LLC; CCFI Companies, LLC; and the "Class B Owners of CCF MIP." Id. ¶¶ 1-13, 27. The Class B Owners' category is comprised of Hanson Enterprises, LLC; Lisa Vittorini; William Baker; Julie Torkelson; Steve Scoggins; Allan Jones; Ted Saunders; and Michael Durbin. Id. ¶ 27

## II. Procedural Background

Plaintiff initially filed this action on March 4, 2025, dkt. no. 1, and was later granted leave to file a second amended complaint, which Plaintiff filed on January 16, 2026, dkt. nos. 50, 51. Therein, Plaintiff brings claims for breach of contract (Count I), bad faith and breach of duty of good faith and fair dealing (Count II), money had and received and unjust enrichment (Count III), breach of fiduciary duty (Count IV), attorney's fees (Count V), and injunctive relief (Count VI). See Dkt. No. 51 at 107-53.

Shortly after filing his SAC, on January 23, 2026, Plaintiff filed a motion for a temporary restraining order and preliminary injunction. Dkt. No. 53. According to Plaintiff's motion, Community Choice has entered into a merger with Katapult Holdings, Inc. (a publicly traded company) and Aaron's Intermediate Holdco,

Inc. Dkt. No. 53 at 3. As part of the purported merger agreement, every Class B Member will receive publicly traded Katapult stock in exchange for their Class B Units. Id. at 3-4. The merger agreement allegedly provides that the parties shall close the agreement "as promptly as practical" with a closing date set for September 30, 2026. Id. at 8. However, Plaintiff argues that nothing would prevent the parties from closing earlier if regulatory approvals and stockholder votes were to be obtained. Id. Due to this merger agreement, Plaintiff submitted a motion for a temporary restraining order to restrain Defendants from:

(a)  making any changes to CCF MIP Holdings, LLC that would exclude or dilute Plaintiff's Class B Units and related rights;

(b)  transferring, cancelling, reissuing, or otherwise altering record ownership or rights associated with Plaintiff's Class B Units; and

(c)  consummating any change in control, reorganization, conversion, or exchange that would impair, convert, or eliminate Plaintiff's rights in his Class B Units or their contingent conversion/exchange rights, during the pendency of this action.

Id. at 1-2. Defendant Allan Jones then submitted a motion to dismiss on January 30, dkt. no. 56, as did the jointly filing Defendants, dkt. no. 57. The Court held a hearing on Plaintiff's

motion and heard oral argument as to jurisdictional questions on February 4, 2026. Dkt. Nos. 55, 68. The motions are now fully briefed and ripe for determination. Dkt. Nos. 58, 76, 79, 85.

**DISCUSSION**

**I.   Defendants' Motions to Dismiss**

   **A.   Legal Authority**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In deciding whether a complaint states a claim for relief, the Court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Ray

6

v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016) (citations omitted). The Court should not accept allegations as true if they merely recite the elements of the claim and declare that they are met; legal conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678-79.

A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)). Ultimately, if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 556 U.S. at 662). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. The Court need not "accept as true a legal conclusion couched as a factual

7

allegation." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

### B.    Defendant Jones's Motion to Dismiss

In his motion to dismiss, Defendant Jones argues that this Court's exercise of personal jurisdiction over him in this matter would be improper because doing so would violate Georgia's long-arm statute and the Due Process clause of the Fourteenth Amendment. See generally, Dkt. No. 56-1. In support of his motion, Jones attached the sworn declaration of Defendant Julie Torkelson, the Chief Financial Officer of CCF Holdings, LLC, who stated that Jones is not a Class A or Class B member of CCF MIP, LLC, he has never been a Class A or Class B member of CCF MIP, LLC, and, rather, Jones is an equity holder of CCF Holdings, LLC, "a completely separate entity" from CCF MIP, LLC. Dkt. No. 56-2 ¶¶ 1-6.

Plaintiff does not dispute that Jones is not a member of CCF MIP, LLC and agrees that the Court may dismiss Jones from the action because "Plaintiff is without knowledge or information sufficient to dispute that representation" as to Plaintiff's money-had-and-received claim. Dkt. No. 85 at 6-7. Plaintiff contends, however, that the dismissal should be without prejudice, as he believes that discovery may "reveal information about the parties and their actions to support additional claims and parties" thus making a final determination as to the Court's jurisdiction over Jones before the close of discovery premature. Id.

8

Because dismissing an action for lack of jurisdiction does not implicate the merits, such a dismissal is without prejudice. See Posner v. Essex Ins. Co., 178 F.3d 1209, 1221 (11th Cir. 1999) (citing Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963)). However, due to the doctrine of res judicata, such a ruling would preclude further litigation on the *same* jurisdictional claims in the forum. Id. (citing N. Ga. Elec. Membership Corp. v. City of Calhoun, 989 F.2d 429, 432–33 (11th Cir. 1993)). Plaintiff's jurisdictional bases for suit against Jones in his second amended complaint are Jones's alleged membership in CCF MIP, LLC as a Class B member and his alleged ownership of Defendant Community Choice. Dkt. No. 51 ¶¶ 3, 9, 27. The only counts wherein Jones is listed as a defendant are Count Three (titled "Money Had and Money Received and Unjust Enrichment"), where Jones is listed as a Class B owner, and Count Five, the derivative claim against all Defendants for attorney's fees. Dkt. No. 51 ¶¶ 126–33; 141–43; see also Stephen A. Wheat Tr. v. Sparks, 754 S.E.2d 640, 648 (Ga. Ct. App. 2014) (noting that, under Georgia law, "[a]n award of attorney fees, costs, or punitive damages is derivative of a plaintiff's substantive claims").

Because Plaintiff does not dispute that the jurisdictional bases for his claims against Defendant Jones are inaccurate, Jones's motion to dismiss, dkt. no. 56 is **GRANTED,** and Counts Three and Five are **DISMISSED without prejudice** as to Defendant Jones.

9

The Court need not comment on the propriety of a future attempt by Plaintiff to again seek leave to amend his complaint to add claims based on *other* jurisdictional grounds against Defendant Jones.

### C.    The Jointly Filing Defendants' Motion to Dismiss

#### 1.    Subject Matter Jurisdiction

The jointly filing Defendants argue that the Court does not have subject matter jurisdiction to hear this case because Plaintiff asserts in the SAC that he is entitled to Class B membership units in CCF MIP, LLC, and, therefore, if Plaintiff is a member of CCF MIP, LLC, such membership would defeat diversity jurisdiction in this case. Dkt. No. 57-1 at 6-10. Plaintiff argues in response that Defendants transferred away his Class B units on February 11, 2025, and so on the day his complaint was filed, March 4, 2025, he was not a member of CCF MIP, LLC despite any type of relief he might seek. Dkt. No. 85 at 8-15. Moreover, Plaintiff argues that the issue of Plaintiff's membership in CCF MIP, LLC at the time of filing is intertwined with the merits of the case, and consequently, ruling on the jurisdictional issue at this point is inappropriate. Id. at 14-15.

Plaintiff's case is based on diversity jurisdiction and brings state law causes of action for breach of contract, money had and money received and unjust enrichment, and breach of fiduciary duty, as well as the derivative claims for attorney's

10

fees, and injunctive relief.[1] Dkt. No. 51 ¶¶ 28–30, 107–53. For an Article III court to exercise diversity jurisdiction over a case, the amount in controversy must exceed $75,000 and the parties must be completely diverse from one another, as in, "*each* defendant is a citizen of a different State from *each* plaintiff". Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373–74 (1978) (emphasis in original); 28 U.S.C. § 1332(a)(1). When determining citizenship of an LLC for purposes of diversity jurisdiction, "a limited liability company is a citizen of any state of which a member of the company is a citizen." Rolling Greens MHP, LP v. Comcast SCH Holdings LLC, 374 F.3d 1020, 1022 (11th Cir. 2004). It then follows that if a plaintiff were a member of a defendant LLC, complete diversity would not exist. See, e.g., Deliverance Poker, LLC v. Tiltware, LLC, 771 F. Supp. 2d 658, 662–65 (W.D. Tex. 2011); Slatton v. PTS Direct Benefits, LLC, No. 4:23-CV-00005-WMR, 2023 WL 12170997, at *2 (N.D. Ga. Apr. 26, 2023). "Citizenship for diversity purposes is determined at the time the suit is filed." MacGinnitie v. Hobbs Grp., LLC, 420 F.3d 1234, 1239 (11th Cir. 2005) (citing Harris v. Garner, 216 F.3d 970, 983 (11th Cir. 2000)).

Here, the parties do not appear to dispute that a holder of Class B membership units would be a "member" of Defendant CCF MIP,

---

[1] As established in Section III of this order, infra, Count Six—which seeks injunctive relief—is a derivative claim for relief based on Plaintiff's substantive counts.

LLC for purposes of determining diversity jurisdiction. Rather, they dispute the effect of Plaintiff's allegation that he is entitled to Class B membership units. See Dkt. No. 57-1 at 6-10; Dkt. No. 85 at 9-15. The Court also has concerns regarding Plaintiff's membership in one or more of the Defendant LLCs based on the status of Plaintiff's employment on the day the complaint was filed. See Dkt. No. 70 at 12:12-14:1 (questioning Plaintiff's counsel on the effect of Plaintiff's official termination from his position with Community Choice on March 5, 2025).

As Plaintiff points out, there is both a facial and a factual attack as to the jurisdictional basis of his case. Dkt. No. 85 at 8-9 (citing Garcia v. Copenhaver, Bell & Assocs., MD's P.A., 104 F.3d 1256, 1260-61 (11th Cir. 1997)). Facial attacks require the Court to examine the operative complaint to determine if there is a basis for subject matter jurisdiction, and factual attacks—as the name suggests—challenge the existence of the facts supporting subject matter jurisdiction. Garcia, 104 F.3d at 1261 (citing Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990)). When examining a facial attack, the allegations in Plaintiff's complaint are taken as true. Id. In assessing a factual attack, the Court may consider matters outside of the pleadings, such as testimony and affidavits. Id. For simplicity, each basis for challenging jurisdiction is analyzed separately below.

### a. The Facial Challenge to Subject Matter Jurisdiction

The jointly filing Defendants' facial attack on the Court's jurisdiction in this case relies on language within the SAC alleging that Plaintiff's Class B units should have immediately vested upon his termination and that Plaintiff is entitled to the reinstatement of Plaintiff's membership in CCF MIP, LLC. Dkt. No. 57-1 at 9-10 (citing Dkt. No. 51 ¶¶ 47, 56, 113, 146). They argue that "for Plaintiff to prevail, the Court must reinstate Plaintiff's membership in CCF MIP. As this remedy would destroy the jurisdiction of this Court, the case must be dismissed." Id. at 10.

These Defendants rely primarily on an unpublished Northern District of Georgia case, Slatton v. PTS Direct Benefits, LLC, to support their arguments. No. 4:23-CV-00005-WMR, 2023 WL 12170997 (N.D. Ga. Apr. 26, 2023). In Slatton, the district court found that the plaintiff was a member of the defendant LLC when (1) the complaint alleged that the plaintiff was "for all relevant times herein" a member of the LLC and (2) the complaint alleged a breach of the LLC's operating agreement and breach of an LLC agreement, both of which would have required the plaintiff to prove he was a member of the defendant LLC to show that he should have been compensated for the LLC's sale. Id. at *1-*2. The court reached its conclusion despite the plaintiff's assertion in a separate

13

certification that he was "either never a member" of the LLC or was "ousted as a member" when the assets of the defendant LLC were sold. Id. at *1. The Court noted that "[p]laintiff cannot simultaneously seek compensation as a member of [the defendant LLC] and argue that 'he was never a member' of [the LLC]." Id. at *2.

This case is somewhat factually distinct from Slatton in that the SAC does not directly allege membership in Defendant CCF MIP, LLC at the time the case was filed. Instead, the SAC alleges that "[f]ollowing Plaintiff's termination, the MIP Owners wrongfully ousted Plaintiff from the company and removed him as a member of Defendant CCF MIP." Dkt. No. 51 ¶¶ 103, 105. Further:

> The MIP Owners have prevented Plaintiff from accessing records and have terminated Plaintiff's status as a member of Defendant CCF MIP, which has resulted in Plaintiff no longer being able to exercise any of his rights and receive the benefits (i.e. distributions) as a member of CCF MIP.

Id. ¶ 106. Therefore, Defendants have not pointed to language in the SAC itself which alleges ongoing membership in CCF MIP, LLC.

As to Slatton's apparent holding that the remedy sought would destroy the Court's jurisdiction, Plaintiff points to a Tenth Circuit case that appears to go the other way. Dkt. No. 85 at 12–13. In Symes v. Harris, the Tenth Circuit addressed the question of whether diversity jurisdiction was destroyed when the remedy sought by the plaintiffs would have retroactively rendered them

part owners of the defendant LLC. 472 F.3d 754, 758 (10th Cir. 2006). In that case, the plaintiffs sued a defendant LLC for breach of contract that allegedly would have made plaintiffs part owners of the defendant LLC, and sought, in part, a declaration that plaintiffs were part owners of the LLC. Id. at 756–57. The Symes court first noted that jurisdiction is determined from the time of filing. Id. at 758 (citing Mullan v. Torrance, 22 U.S. 537, 539 (1824); Grupo Dataflux v. Atlas Glob. Grp., L.P., 541 U.S. 567, 571 (2004)). The court then reversed the lower court's finding that diversity jurisdiction did not exist, stating that "the essence of the time-of-filing rule is that the district court must determine the jurisdictional facts as they are when the complaint is filed, not as they might be upon final judgment." Id. at 758. It then characterized the district court's decision as "speculation" that a future remedy would defeat jurisdiction. Id. at 758–59. Lastly, the Symes court compared the analysis to that employed for § 1332's amount in controversy requirement:

> [I]t is well settled that a district court does not lack § 1332 jurisdiction if a plaintiff ultimately recovers less than the required jurisdictional amount, if the district court dismisses part of the plaintiff's claim on a motion for summary judgment (thereby reducing the plaintiff's remaining claim below the requisite jurisdictional amount), or if the plaintiff's complaint reveals that a perfect defense might be interposed to reduce the alleged amount in controversy below the jurisdictional amount.

Id. at 759 (citing Anderson–Thompson, Inc. v. Logan Grain Co., 238

15

F.2d 598, 601 (10th Cir. 1956)); see also St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289-90 (1938) ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." (citations omitted)).

The comparison to § 1332's amount in controversy requirement might cut the other way, though. If a defendant can show "to a legal certainty" from the face of the pleadings that the plaintiff could not recover the claimed amount, the suit will be dismissed for lack of jurisdiction. Red Cab Co., 303 U.S. at 289; Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 807 (11th Cir. 2003) (citations omitted). The essence of the jointly filing Defendants' argument here appears to be that it is a legal certainty that, based on the SAC, if Plaintiff is victorious in this action, complete diversity will not exist because Plaintiff's requested remedy—return of the Class B Units—would destroy complete diversity. See Dkt. No. 57-1 at 10 ("Accordingly, for Plaintiff to prevail, the Court must reinstate Plaintiff's membership in CCF MIP. As this remedy would destroy the jurisdiction of this Court, the case must be dismissed."). This logic squares with Slatton, as the court in that case held that finding the plaintiff's membership in the defendant LLC was *necessary* to his recovery. Slatton, 2023 WL 12170997, at *2 ("To prevail on his claims of breach, Plaintiff would need to prove his

16

membership in [the defendant LLC].").

From the face of the SAC, though, the Court cannot yet conclude that it is a *legal certainty* that Plaintiff's recovery is necessarily based on a finding that he is entitled to the return of the Class B Units. In the SAC, Plaintiff seeks recovery in many forms, including: (1) a monetary amount in excess of $1,744,452.37 due to the alleged breach of contract separate from the value of Plaintiff's Class B Units, dkt. no. 51 ¶ 117; (2) the full value of Plaintiff's Class B Units, id.; (3) damages due to loss of job opportunities and reputational damage under his claim of "bad faith beach of duty of good faith and fair dealing," id. ¶ 124; (4) amounts received by CCF MIP Class B Unit holders that would have gone to Plaintiff had his membership not been forfeited, id. ¶ 133; and (5) damages for breach of fiduciary duty, id. ¶ 140. Though Plaintiff appears to seek specific performance through return of the Class B Units in his preliminary injunction motion, he has also stated that he is not seeking to be reinstated as a Class B member in CCF MIP, LLC, and such a request for relief does not explicitly appear in the SAC. See Dkt. No. 85 at 8-9 (Plaintiff's motion for a preliminary injunction wherein Plaintiff states that reinstatement as a member of CCF MIP is not "part of any relief Plaintiff seeks"); Dkt. No. 53 at 16-18 (stating that in the event of the Katapult merger, Plaintiff would "be entitled to" shares of Katapult allocated to CCF MIP Unit holders, that he will be

17

irreparably harmed by the Katapult merger because "tracing and recovering Plaintiff's rightful allocation would require complex multi-party litigation against numerous defendants including innocent transferees," and that he "cannot recreate this opportunity by purchasing Katapult shares on the open market"); Dkt. No. 51 ¶ 151 (not directly stating that Plaintiff seeks specific performance via delivery of the Class B Units but stating that a requested injunction will force Defendants to "comply with the terms and conditions of the contracts they have drafted").

Therefore, because the face of the SAC does not allege membership in Defendant CCF MIP, LLC, and because Plaintiff's possible success in this matter does not necessarily require a finding that defeats diversity jurisdiction, the jointly filing Defendants' facial challenge to the Court's jurisdiction fails. This finding at this juncture, however, does not preclude raising the issue of subject matter jurisdiction again as the case proceeds.

### b. The Factual Challenge to Subject Matter Jurisdiction

The jointly filing Defendants appear to concede that, factually, Plaintiff was not a member of CCF MIP, LLC after his termination because Plaintiff's alleged Class B Units were then forfeited. Dkt. No. 57-1 at 9–10 ("These monthly distributions stopped because Plaintiff's units were automatically forfeited

18

upon termination"); Dkt. No. 45-2 ¶¶ 1-6 (sworn declaration of Defendant Julie Torkelson, the CFO of Defendant CCF Holdings, LLC, stating that Plaintiff's CCF MIP, LLC units "were forfeited and automatically inured to the benefit of the Class A Member"). The Court, however, is concerned about when that termination actually occurred, and therefore, when Plaintiff's Class B Units were forfeited and when he ceased to be an officer and member of Community Choice and the CCF entities.

In the SAC, Plaintiff alleges that he was removed from administrative leave and terminated without cause on March 5, 2025, but suit was filed the day prior, on March 4, 2025. Dkt. No. 51 ¶¶ 102, 110; Dkt. No. 1. It thus appears that on the operative day for determining diversity jurisdiction, the day suit was filed, Plaintiff was still an officer of Community Choice, albeit on administrative leave. Indeed, at the hearing on Plaintiff's motion for a temporary restraining order, Plaintiff's counsel presented a termination document that showed the date of Plaintiff's termination as March 5, 2025. Dkt. No. 70 at 12:11-17. Plaintiff's counsel argued that Plaintiff was "effectively terminated" prior to suit as he had been "cut out" of his responsibilities, his email, and his phone, and so "he had no effective ability to pursue his job." Id. at 12:23-13:08.

The jointly filing Defendants do not directly address the issue of Plaintiff's termination date in either their motion to

19

dismiss or their supplemental briefing following the recent motions hearing.[2] Rather, they state that Plaintiff was a member of CCF MIP on March 4,2025.[3] See Dkt. No. 76 at 3; Dkt. No. 78 ¶ 4.

Additionally, as Plaintiff points out, when a jurisdictional issue is intertwined with an element of a plaintiff's cause of action, a court should apply a Rule 56 summary judgment standard when ruling on a motion to dismiss asserting a factual attack on subject matter jurisdiction. See Lawrence, 919 F.2d at 1530; Garcia, 104 F.3d at 1261 (citations omitted). Here, the circumstances of Plaintiff's termination, including the effective

---

[2] The Court can take up the issue of subject matter jurisdiction *sua sponte*, but must give the parties notice and an opportunity to be heard on the issue. McIntosh v. Royal Caribbean Cruises, Ltd., 5 F.4th 1309, 1312 (11th Cir. 2021) (citations omitted). The Court notified parties of its concerns regarding subject matter jurisdiction, dkt. no. 55, and afforded the parties an opportunity to be heard on the issue, dkt. no. 68. However, the precise topic of Plaintiff's termination date was not raised until the February 4 motions hearing. Dkt. No. 70 at 12:7-12:17.

[3] The jointly filing Defendants argue, in part, that Plaintiff should be factually considered to have been a member of CCF MIP on the date of filing because Plaintiff pled in his initial complaint that he was then a member of CCF MIP, LLC. Dkt. No. 76 at 3-4. The rules that apply, however, are multi-tiered: while facts establishing diversity jurisdiction are evaluated as of the date of initial filing (here, March 4, 2025), the Court looks to the operative complaint, here the SAC, to determine whether Plaintiff has alleged sufficient jurisdictional facts. Cf. Chevaldina v. Katz, 787 F. App'x 651, 653 (11th Cir. 2019) (basing its holding on statements in the plaintiff's amended complaint to determine whether sufficient jurisdictional facts existed at the commencement of the action).

date of his termination and when he was removed as a Class B member, are intertwined with an element of his cause of action for breach of contract as it concerns the manner and timing of an alleged breach. See UWork.com, Inc. v. Paragon Techs., Inc., 740 S.E.2d 887, 893 (Ga. Ct. App. 2013) ("The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." (quoting Norton v. Budget Rent A Car System, 705 S.E.2d 305 (Ga. Ct. App. 2010))). Discovery will likely reveal more information regarding when the termination occurred and the parameters of Plaintiff's administrative leave status on March 4, 2025. Therefore, the Court finds that ruling on this jurisdictional issue is inappropriate before discovery has concluded as to the circumstances regarding the end of Plaintiff's employment with Community Choice. A ruling is better suited for evaluation in a later motion for summary judgement. Therefore, the jointly filing Defendants' motion to dismiss, dkt. no. 57, is **DENIED** on this ground at this time.

### 2.    Count Six

Finally, the jointly filing Defendants argue that Count Six must be dismissed as procedurally improper because injunctive relief is a type of relief, not a stand-alone cause of action. Dkt. No. 57-1 at 11–12; Alabama v. U.S. Army Corps of Eng'rs, 424 F.3d 1117, 1127 (11th Cir. 2005) ("[A]ny motion or suit for either

21

a preliminary or permanent injunction must be based upon a cause of action, such as a constitutional violation, a trespass, or a nuisance. 'There is no such thing as a suit for a traditional injunction in the abstract.'" (quoting Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1097 (11th Cir. 2004))). Indeed, Plaintiff's claim for injunctive relief is derivative of his substantive claims. See Robinson v. SunTrust Mortg., Inc., 785 F. App'x 671, 674 n.2 (11th Cir. 2019) (describing "claims for attorney's fees, punitive damages, and injunctive relief" as "derivative"). Therefore, the jointly filing Defendants' motion to dismiss, dkt. no. 57, is **GRANTED** on this ground, and Count Six is **DISMISSED** as a stand-alone claim.

## II.   Plaintiff's Motion for Preliminary Injunction[4]

### A.   Legal Authority

The purpose of a preliminary injunction order is to preserve the status quo until a district court renders a decision on the merits of a case. United States v. DBB, Inc., 180 F.3d 1277, 1282 (11th Cir. 1999). "To receive a preliminary injunction, [Plaintiff] must clearly establish the following requirements: '(1) a substantial likelihood of success on the merits; (2) a

---

[4] Because the Court is evaluating Plaintiff's request for an injunction after issuing notice to the adverse party and having held a hearing on the matter, dkt. no. 68, the motion is evaluated as one for a preliminary injunction as opposed to a temporary restraining order under Federal Rule of Civil Procedure 65.

substantial threat of irreparable injury; (3) that the threatened injury to [Plaintiff] outweighs the potential harm to [Defendants]; and (4) that the injunction will not disserve the public interest.'" Keister v. Bell, 879 F.3d 1282, 1287 (11th Cir. 2018) (quoting Palmer v. Braun, 287 F.3d 1325, 1329 (11th Cir. 2002)). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." Id. (internal quotations omitted).

### B.    Likelihood of Success on the Merits

The first factor, likelihood of success on the merits, is often considered the most important: if the Court finds that this factor is not met, the Court need not consider the other factors. See Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1247 (11th Cir. 2002); see also Schiavo ex rel. Schindler v. Schiavo, 357 F. Supp. 2d 1378, 1383 (M.D. Fla. 2005), aff'd, 403 F.3d 1223 (11th Cir. 2005) (noting that substantial likelihood of success on the merits is "generally the most important." (citation omitted)).

Here, Plaintiff argues that he is substantially likely to succeed on the merits of his breach of contract claim based on the language contained in the Awards Agreement. Dkt. No. 53 at 12–13. Plaintiff points to language in the agreement in section 2.(b)-(c) providing that:

(b) <u>Termination of Employment</u>. Notwithstanding Section [] 1.12(a) hereof, if the Grantee's Employment is terminated by a Holdings Group entity without Cause (including such a termination due to Grantee's Disability), by the Grantee for Good Reason or due to the Grantee's death (each, a "Qualifying Termination"), 100% of the Interests will become vested as of the date of such termination. Upon the termination of the Grantee's Employment for any reason other than a Qualifying Termination, unless determined otherwise by the Company, all unvested Interests shall be immediately and automatically cancelled and forfeited for no consideration. Interests that are (or become) vested at the time of the termination of the Grantee's Employment shall remain outstanding in accordance with the terms of this Agreement, the Plan and the Operating Agreement.

(c)    <u>Forfeiture    Upon    Termination    for    Cause</u>. Notwithstanding vesting of the Interests pursuant to this agreement, all of the Interests, whether or not vested, shall be immediately and automatically cancelled and forfeited for no consideration upon a termination of the Grantee's employment for Cause.

Dkt. No. 51-1 at 1–2 (emphasis in original). In section 2(d), the Awards Agreement then goes on to detail the definition of "Cause" as used in the agreement:

(d) <u>Definitions</u>

(i) *Cause*. For purposes of this Agreement, the term "<u>Cause</u>" means:

1) the Grantee's material failure to meet the duties and responsibilities reasonably assigned to the Grantee and the Grantee's failure to cure such breach within 20 days following written notice from the Board of Managers of Holdings (the "Board") to the Grantee of such failure;

2) the Grantee's failure or refusal to comply, on a timely basis, with any lawful direction or instruction of the Board;

3) the Grantee's gross negligence or willful misconduct in the performance of his/her duties as an employee of any entity in the Holdings Group;

4) the Grantee's commission of fraud, embezzlement, misappropriation of funds, breach of fiduciary duty or act of dishonesty against any entity in the Holdings Group;

5) the Grantee's conviction of a felony or entry by the Grantee's conviction of a felony or entry by the Grantee of a plea to nolo contendere or a plea of guilty under an indictment to a felony; or

6) the Grantee's habitual drug addiction or intoxication.

Id. at 2.

Plaintiff appears to argue that because he was not provided notice and an opportunity to cure by the board under 2(d)(i)(1), he was fired "without Cause" and so his Class B Units could not be forfeited under Section 2(b) or 2(c). Dkt. No. 53 at 12–13. However, due to the disjunctive "or" in 2(d)(i)(5), that is only one of six potential justifications for termination "for Cause." Dkt. No. 51-1 at 2. After discovery, Defendants may argue that the termination for "Cause" derived, for example, from section 2(d)(i)(2) ("the Grantee's failure or refusal to comply, on a timely basis, with any lawful direction or instruction of the Board") or 2(d)(i)(3) ("the Grantee's gross negligence or willful misconduct in the performance of his/her duties as an employee of any entity in the Holdings Group"). Id. Neither 2(d)(i)(2) or 2(d)(i)(3) appear to require a notice period or an opportunity to

25

cure to justify termination for "Cause." Id.

Indeed, the precipitating event spurring Plaintiff's termination appears to be his refusal to sign a credit agreement under "pressure" from Community Choice. Dkt. No. 51 ¶¶ 77-89. Discovery may perhaps show that Plaintiff's refusal to sign the agreement constituted a refusal to comply with a lawful direction of the board or was the result of gross negligence or willful misconduct. Without additional supporting materials, the Court is unable to conclude that Plaintiff is likely to succeed in his breach of contract claim.

Therefore, whether Plaintiff's termination was "for Cause" is a question of fact, and the Court cannot determine from the Awards Agreement, SAC, and preliminary injunction motion alone that Plaintiff is substantially likely to succeed on that ground. Indeed, Plaintiff's counsel acknowledged at the February motions hearing that the facts surrounding Plaintiff's termination and success on the merits are "hotly contested." Dkt. No. 70 at 9:12-22; 30:7-14. Discovery has only recently begun in this case, dkt. no. 87 at 3, and Defendants may theoretically present evidence that Plaintiff was properly terminated for cause.

Because Plaintiff has not demonstrated a substantial likelihood of success on the merits, the Court may stop here. Johnson & Johnson Vision Care, Inc. 299 F.3d at 1247. But because the parties have fully briefed the remaining factors, and the Court

26

concludes that each factor counsels against granting a preliminary injunction, the Court continues the analysis below.

### C.   Irreparable Harm

To prevail on the second factor—concerning irreparable harm—in the preliminary injunction analysis, the claimed injury "must be neither remote nor speculative, but actual and imminent." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla., 896 F.2d 1283, 1285 (11th Cir. 1990)). Even if Plaintiff were to "establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." Id. (citations omitted). "An injury is 'irreparable' only if it cannot be undone through monetary remedies." Cate v. Oldham, 707 F.2d 1176, 1189 (11th Cir. 1983).

In his briefing, Plaintiff presents essentially three arguments for why he will suffer irreparable harm if the requested injunction is not granted: (1) rights associated with the disputed Class B units will be extinguished once the merger is complete, and monetary damages will not reestablish these rights; (2) any potential damages award will be prohibitively difficult to calculate once the merger completes; and (3) if the merger is completed, CCF MIP, LLC will cease to exist, and recovering any monetary damages could be impossible. Dkt. No. 79 at 10–19; Dkt.

27

No. 53 at 13–18.

A party's potential loss of rights associated with an ownership interest may sometimes weigh in favor of granting a preliminary injunction. See, e.g., Telestrata, LLC v. NetTALK.com, Inc., 126 F. Supp. 3d 1344, 1353–54 (S.D. Fla. 2015) ("'The denial of a controlling ownership interest in a corporation,' as well as 'conduct that unnecessarily frustrates efforts to obtain or preserve the right to participate in the management of a company,' may constitute irreparable harm." (alterations adopted) (quoting Wisdom Imp. Sales Co. v. Labatt Brewing Co., 339 F.3d 101, 114–15 (2d Cir. 2003))). But here, Plaintiff has not provided sufficient evidence that he will be irreparably harmed by a loss of ownership rights associated with the disputed Class B units. Two cases cited by Plaintiff provide insight into what kinds of potential lost ownership rights are likely to justify a preliminary injunction.

In Telestrata, the district court found that irreparable harm existed when, without an injunction, the defendant corporation would have issued additional shares in the company that would have both denied the plaintiff LLC a controlling interest in the company and significantly diluted the plaintiff LLC's interest in the company. 126 F. Supp. 3d at 1353. While Plaintiff cites the case for the court's recognition that a potential for significant dilution of the value of shares in a company may constitute irreparable harm, dkt. no. 79 at 15–16; dkt. no. 53 at 13–14,

28

Plaintiff's most direct allegation related to ownership rights is that Defendants have "silenced his voice in approving the Katapult merger and any related organizations," dkt. no. 53 at 18. But the disputed interest here is a 2.369 percent profits interest in CCF MIP, LLC, which is meaningfully different from the controlling interest at issue in Telestrata. Dkt. No. 51 ¶ 47; Dkt. No. 79 at 10. The Court finds that the potential loss of such a minority control over the governance of an organization does not alone demonstrate irreparable harm in this case.

In a second case cited by Plaintiff, Corbin v. Corbin, the plaintiff requested an injunction to prevent a defendant stockholder from (1) refusing to issue dividends to plaintiff (a fellow stockholder), (2) wasting corporate assets, and (3) voting with or exercising rights associated with disputed stocks. 429 F. Supp. 276, 279-80 (M.D. Ga. 1977). The district court found that irreparable injury would result if the injunction was not issued because "much more" than a mere threatened monetary injury would result. Id. at 282. Specifically, without the injunction, the plaintiff would have experienced "significantly adverse tax consequences" if the at issue dividends were not paid by a certain date and the plaintiff might have suffered the complete loss of the disputed property if the Court did not act. Id.

Like the plaintiff in Corbin, Plaintiff alleges that he will suffer the complete loss of his Class B Units if the injunction is

not issued. Dkt. No. 53 at 16; Dkt. No. 79 at 16. And like the injuries alleged in Corbin, the injuries alleged by Plaintiff are predominantly monetary. See Dkt. No. 53 at 14–19. However, Plaintiff has not demonstrated that these allegedly imminent injuries would be "much more" than a threatened monetary injury. In Corbin, the plaintiff was one of five shareholders in a small, family-owned corporation, and the thirty-seven disputed shares determined the majority ownership in the corporation. 429 F. Supp. at 278, 280. Here, Plaintiff is disputing the ownership of 9.002 Class B Units representing a 2.369-percent profits interest in CCF MIP, LLC. Dkt. No. 51 ¶ 47. Though the profits interest may represent significant monetary value, the rights associated with ownership are distinguishable from the nature of the property at issue in Corbin.

The Court is equally unpersuaded that damages would be so difficult to calculate post-merger as to justify a preliminary injunction. The monthly distributions Plaintiff could be entitled to if he prevails in this case are readily determined, dkt. no. 51 ¶¶ 47-53, and the persons to whom the allegedly wrongful distributions were made are already parties to this case as the Class B Owners, id. ¶¶ 27, 49. Upon the merger, the Class B Units will be converted into publicly traded Katapult stock. Dkt. No. 53 at 2-3. Share prices of a publicly traded company can be readily determined, and money damages are likely appropriate to compensate

30

for the loss. Cf. Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 262 (2d Cir. 2002) (citing Simon v. Electrospace Corp., 320 N.Y.S.2d 225, 232–33 (1971)) (finding that there was "no reason why" money damages would not compensate the plaintiff for loss of a publicly traded stock in a breach of contract action).

Additionally, the measure for breach of contract damages in Georgia is the measure required to put the injured party "in the position he would have been if the contract had been fully performed." Accent Walls, Inc. v. Parker, 292 S.E.2d 509, 510 (Ga. Ct. App. 1982). If the Awards Agreement was breached as Plaintiff claims, then the value of the Class B Units could be determined based on, perhaps in part, the share price of the publicly traded Katapult stock at the time when judgment is entered. See, e.g., Bluegreen Corp. v. Siegel, No. 06-80718-CIV, 2006 WL 8435447, at *6 (S.D. Fla. Sept. 29, 2006), report and recommendation adopted, 2006 WL 8435448 (Oct. 12, 2006) (stating that a plaintiff seeking damages for divested shares could "be made whole by being awarded the difference between the share price on the date of the divestiture and the share price on (or about) the date of the judgment. Damages in such a sum would enable [the plaintiff] to then reacquire the number of shares of which it had been divested").

Finally, Plaintiff's argument that the merger would prevent a meaningful recovery because CCF MIP, LLC would cease to exist is

31

unavailing. Dkt. No. 79 at 12, 17. In the two substantive counts of the complaint wherein CCF MIP, LLC is listed as a defendant, it is alongside other entities, namely, Community Choice (CCF Holdings, LLC) and CCFI Companies, LLC. See Dkt. No. 53 at 36 (Count One); id. at 39 (Count Two). Plaintiff has presented no evidence to show that Defendants Community Choice or CCFI Companies, LLC are insolvent, or that the LLCs will not continue to exist after the completion of the merger. Rather, Plaintiff attached to his motion for a preliminary injunction evidence that Community Choice will continue to exist as a subsidiary of Katapult after the merger closes. Dkt. No. 53-1 at 12 ¶ C.

Altogether, Plaintiff has not shown that he will suffer irreparable harm if the merger were to move forward. This, standing alone, would constitute an independent basis for denying Plaintiff's requested preliminary injunction. Siegel, 234 F.3d at 1176.

### D.   Weighing of Harms

The third factor in the preliminary injunction analysis requires the Court to balance "the competing claims of injury" between the parties and to "consider the effect on each party of the granting or withholding of the requested relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (internal quotation marks omitted) (quoting Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 542 (1987)). Plaintiff argues that

32

"denying the injunction would cause Plaintiff catastrophic and permanent harm" because he would be excluded from "a once-in-a-lifetime liquidity event that will make every other Class B Member an owner of publicly traded Katapult stock." Dkt. No. 53 at 20. In contrast, Plaintiff argues, "Defendants cannot credibly claim hardship from complying with their own contracts." Id. Additionally, Plaintiff contends that an injunction would merely serve as a "temporary pause" resulting only in "business inconvenience" to Defendants. Dkt. No. 79 at 20.

Defendants, instead, claim that "enjoining a large, multi-party corporate merger would inflict substantial and irreversible harm on numerous stakeholders—including two corporations and their shareholders who are not party to this dispute." Dkt. No. 76 at 9.

Defendants' argument is more compelling. A preliminary injunction could affect many stakeholders of the Katapult merger, while Plaintiff, should he prevail, could likely be made whole with monetary damages even if the merger goes forward.

### E.   Public Interest

Similarly, the public interest is best served by declining to grant a preliminary injunction in this case. Plaintiff correctly points out that, in general, the public interest is served when contract rights are enforced. See, e.g., Ride the Ducks of Phila., LLC v. Duck Boat Tours, Inc., 138 F. App'x 431, 434–35 (3d Cir. 2005) ("The public has a strong interest in seeing that contract

and property rights are respected."). But here, because Plaintiff has not demonstrated a likelihood of success on the merits of his breach of contract claim, the public interest would not be well served by the premature enforcement of a contract where breach has not been sufficiently demonstrated. Rather, the public interest would likely be better served by allowing persons and entities who are not parties to this lawsuit to rely on a merger agreement previously made without interference from the Court.

Therefore, because Plaintiff has not shown that the necessary conditions for a preliminary injunction exist, Plaintiff's motion, dkt. no. 53, is **DENIED.**

**CONCLUSION**

For these reasons, Defendant Jones's motion to dismiss, dkt. no. 56, is **GRANTED**; the jointly filed Defendants' motion to dismiss, dkt. no. 57, is **GRANTED in part and DENIED in part**; and Plaintiff's motion for a preliminary injunction, dkt. no. 53, is **DENIED.**

**SO ORDERED** this 14th day of April, 2026.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

34
